**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JESUS NAVARRO,

Plaintiff

v.

NAPHCARE, et al,

Defendants

Case No.: 3:24-cv-00597-MMD-CSD

**Report & Recommendation of United States Magistrate Judge**

Re: ECF No. 41

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

*Pro se* Plaintiff Jesus Navarro, an inmate at the Northern Nevada Correctional Center, filed a second amended complaint under 42 U.S.C. § 1983. (ECF No. 41.) The court screens his complaint below.

## I. BACKGROUND

Plaintiff alleges that, on August 31, 2023, while driving his motorcycle, a patrol car pulled up behind him and activated its emergency lights. (ECF No. 41 at 3(a).) Believing he had nowhere to pull over safely, Plaintiff attempted a left-hand turn, but the patrol car struck his motorcycle, causing him to crash. Allegedly fearing for his life, Plaintiff abandoned his motorcycle and fled on foot. (*Id.*) John Doe Police Officers 1, 2, and 3 pursued Plaintiff and tackled him to the ground, breaking his right clavicle. (*Id.* at 5.) After detaining Plaintiff, officers allegedly explained that they had stopped him for a broken taillight.

Next, Officers 2 and 3 took Plaintiff to Renown Regional Emergency Room, where they waited for 15 to 20 minutes before deciding to forgo Plaintiff's treatment and book him at the Washoe County Jail. (*Id.* at 3(b).) During processing, Nurse Jane Doe 1 ("Nurse 1") assessed Plaintiff's injuries and initially deemed him unfit for booking. Officers 2 and 3 allegedly pulled Nurse 1 to a nearby hallway to speak to her privately, and when she returned, she told Plaintiff he was cleared for booking.

Plaintiff completed the booking process and waited 40 days in jail before medical staff reassessed his injury and ordered emergency surgery to rebreak and repair his clavicle. During that time, Plaintiff suffered severe pain and numbness in his upper shoulder and collarbone.

On April 22, 2026, the court allowed Plaintiff to proceed with a Fourteenth Amendment claim for inadequate medical treatment against Nurse 1's colleague, Nurse Jane Doe 2, who Plaintiff previously asserted had failed to provide him with proper medical care. (ECF No. 38.) The court dismissed all remaining claims with leave to file a second amended complaint.

On May 7, 2026, Plaintiff filed a second amended complaint, which the court screens below.

## II. SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In reviewing the complaint, courts must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff

must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act requires a federal court to dismiss an incarcerated person's claim if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal for failure to state a claim is governed by Federal Rule of Civil Procedure 12(b)(6), with the same standard applied under § 1915.

When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle them to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff. *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere

labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## III. SCREENING

### A. Fourth Amendment Excessive Force

#### a. John Doe Officers 1–3

Claims of excessive force during an arrest or seizure are evaluated under the Fourth Amendment and are analyzed using an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he question is whether the officers' actions are 'objectively

reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted).

To plead the section 1983 elements, a complaint must identify what constitutional right each defendant violated and provide sufficient facts to plausibly support each violation. *See, e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting that defendants must personally participate in misconduct to be liable under section 1983).

"Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force." *Andrews v. City of Henderson*, 35 F.4th 710, 715 (9th Cir. 2022) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007)). Whether a constitutional violation occurs turns on "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Id.* (citing *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021)).

**i. Type and Amount of Force Used**

When evaluating the type and amount of force used, courts consider the "specific factual circumstances" of each case*. Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (quoting *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017)). Courts evaluate the "nature and degree of physical contact" and the "risk of harm and the actual harm experienced." *Id.* at 1152. "A physical tackle that results in severe injury may constitute a significant use of

force." *Andrews*, 35 F.4th at 716 (finding that a tackle resulting in a broken hip amounted to significant force).

Here, John Doe Officers 1, 2, and 3 allegedly crashed their patrol car into Plaintiff's motorcycle before tackling him to the ground and breaking his right clavicle. (ECF No. 41 at 3(a).) That injury caused severe pain, immobility, and emergency surgery. Under any measure, the force used by officers was significant. Next, the court weighs this significant intrusion against the government's interest in using force.

**ii. Government Interest**

Courts evaluate the government's interest in using force by considering: "(1) how severe the crime at issue was, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Andrews*, 35 F.4th at 716 (citation omitted). Although these factors are not exclusive, the second factor—whether the suspect posed an immediate threat to others—is most important. *Id.*

Applying this test to the complaint, the court concludes that the government's interest was minimal here. Police allegedly stopped Plaintiff for a broken taillight—hardly the type of violation that would justify the use of significant force. Nor does the complaint show that Plaintiff posed an immediate threat to others. Plaintiff's flight weighs in favor of some use of force, but the minor nature of the offense, the severity of the injury, and the absence of allegations showing that Plaintiff was a threat to others, support a finding that the force used was disproportionate to the government's interest.

Balancing the amount of force used with the government's interest, the court concludes that Plaintiff states a plausible claim for excessive force against Officers 1, 2, and 3.

**b. Reno Chief of Police Kathryn Nance**

There is no vicarious liability under section 1983, meaning that a supervisor cannot be liable for the actions of her subordinates. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted); *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Snow*, 681 F.3d at 989.

The causal connection can include: "1) [the supervisor's] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) conduct that showed a reckless or callous indifference to the rights of others." *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir. 2013) (citations and internal quotation marks omitted).

"The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or should have known would cause others to inflict a constitutional injury." *Id.* (citation and quotation marks omitted).

In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation.'" *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (internal quotation marks omitted).

A city's failure to train its employees "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). There must be a direct causal link between the failure to train, and the injury suffered by the plaintiff. *Id.* at 391.

Deliberate indifference requires a "showing that the facts available to the [defendant] put it on actual or constructive notice that its practices … were substantially certain to result in the violation of the constitutional rights of [its] citizens." *Sandoval v. County of San Diego*, 985 F.3d 657, 682 (9th Cir. 2021) (citation and quotation marks omitted).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation and quotation marks omitted); *see also Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022) ("While deliberate indifference can be inferred from a single incident 'when the unconstitutional consequences of failing to train' are patently obvious, …, an inadequate training policy itself cannot be inferred from a single incident."). At the pleading stage, a claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts" to provide the opposing party with fair notice to defend itself. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citation and quotation marks omitted).

Here, Plaintiff alleges that Reno Police Chief Kathryn Nance failed to train officers on the proper use of PIT maneuvers involving motorcycles, while also failing to train officers on how to provide adequate medical attention when a suspect is injured during an arrest. He asserts that Chief

Nance has a custom of allowing officers to "decide for themselves" when to use their patrol vehicles in a dangerous manner. (ECF No. 41 at 3.)

These assertions alone fail to state a claim against Chief Nance. There are no allegations that she personally participated in the alleged failure to train. Nor are there sufficient factual allegations to support a claim based on a failure to train. There are no factual allegations of a pattern of similar violations, or facts giving rise to a claim for deliberate indifference from a single incident.

Accordingly, the court recommends that Plaintiff's claim for excessive use of force against Chief Nance be dismissed with prejudice.

**B. Fourth Amendment Post-Arrest Inadequate Medical Care**

The Fourth Amendment protects persons who are detained by police during an arrest against the "deprivation of necessary medical care." *D'Braunstein v. Cal. Highway Patrol*, 131 F.4th 764, 768 (9th Cir. 2025). Whether an officer has deprived an arrestee of necessary care turns on an objective reasonableness standard. *Id.* Under that standard, officers must "seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Id.* (citing *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006)).

Here, Plaintiff alleges that Officers 2 and 3 deprived him of necessary medical care by taking him to the hospital and then to jail without allowing medical professionals to assess his injury. On these facts, Plaintiff states a plausible claim for relief. Officers 2 and 3 allegedly tackled Plaintiff to the ground with sufficient force to break his collarbone. It is likely that they knew or should have known that he was seriously injured. By taking Plaintiff from the hospital before treatment, the officers' conduct plausibly fell below an objectively reasonable standard.

Therefore, the court concludes that Plaintiff may proceed with a Fourth Amendment medical care claim against Officers 2 and 3.

**C. Fourteenth Amendment Inadequate Medical Care**

Pretrial detainees have a right to adequate medical treatment that arises from the Fourteenth Amendment. *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citation omitted). Such claims are evaluated under an objective deliberate indifference standard. *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). The elements of such a claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at a substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.

**a. Nurse Jane Doe 1**

According to Plaintiff, Officers 2 and 3 brought him to the Washoe County Jail, where Nurse 1 assessed whether he was medically cleared for booking. Plaintiff allegedly told Nurse 1 that he believed his collarbone was broken. She initially refused to clear him and told Officers 2 and 3 to take Plaintiff back to Renown for immediate treatment. But after speaking with the officers privately, Nurse 1 suddenly changed her opinion and cleared Plaintiff for booking.

Liberally construing the complaint, Plaintiff alleges a sufficient claim for relief. The complaint shows that Nurse 1 initially recognized the severity of Plaintiff's injury by asking Officers 2 and 3 to return him to Renown for treatment. However, after speaking with the officers, she intentionally decided not to provide medical care, causing Plaintiff to wait in jail for 40 days with a broken clavicle.

Plaintiff may proceed with his Fourteenth Amendment inadequate medical care claim against Nurse 1.

**b. John Doe Officers 2 and 3**

Plaintiff alleges that Officers 2 and 3 acted with deliberate indifference by persuading Nurse 1 to medically clear him for booking despite his injury. According to Plaintiff, the officers knew of his injury and went out of their way to ask Nurse 1 to complete his medical processing.

Plaintiff asserts a sufficient claim for relief. His allegations plausibly show that Officers 2 and 3 knew that he was injured and deliberately persuaded Nurse 1 to withhold medical care, causing Plaintiff to go without medical attention for 40 days.

Therefore, Plaintiff may proceed against Officers 2 and 3 with a Fourteenth Amendment claim for inadequate medical care.

**c. Nurse Jane Doe 2**

The court previously allowed Plaintiff to proceed with a Fourteenth Amendment medical care claim against Nurse 2. Plaintiff, however, failed to carry his prior allegations against Nurse 2 to his second amended complaint as required by the court's previous order. (ECF No. 38 at 10.) Thus, no allegations against Nurse 2 are properly before the court.

Accordingly, the court will allow Plaintiff a final amendment to reassert his prior allegations against Nurse 2.

**d. Sheriff Balaam**

Plaintiff alleges that Sheriff Balaam failed to train Nurse 1 in the proper procedures for providing medical care to inmates. He asserts that Sheriff Balaam knew or should have known that Nurse 1's care fell below the standard of care required under her employment contract with NaphCare.

Plaintiff does not state a colorable claim for relief against Sheriff Balaam. There is no allegation that Sheriff Balaam personally participated in the denial of adequate medical care. Nor are there sufficient factual allegations to support a claim based on an alleged failure to train under the standard outlined above.

Therefore, the court recommends that Plaintiff's claim against Sheriff Balaam be dismissed with prejudice.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order:

(1) **DISMISSING** Plaintiff's Fourth Amendment excessive force claim against Reno Chief of Police Kathryn Nance with prejudice.

(2) **DISMISSING** Plaintiff's Fourteenth Amendment inadequate medical care claim against Washoe County Sheriff Darin Balaam with prejudice.

(3) **ALLOWING** Plaintiff to proceed with his Fourth Amendment excessive force claim against John Doe Officers 1, 2, and 3.

(4) **ALLOWING** Plaintiff to proceed with his Fourth Amendment inadequate medical care claim against John Doe Officers 2 and 3.

(5) **ALLOWING** Plaintiff to proceed with his Fourteenth Amendment inadequate medical care claim against Jane Doe Nurse 1.

(6) **ALLOWING** Plaintiff a final amendment to reassert his allegations against Jane Doe Nurse 2.

(7) Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the

Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

(8) **IT IS FURTHER RECOMMENDED** that if this Report and Recommendation is adopted:

1. The Clerk of Court should be directed to issue summonses for the Defendants against whom claims are proceeding, and the Clerk should be directed to deliver these to the U.S. Marshal for service.
2. The Clerk also shall be directed to send sufficient copies of the SAC and the Order adopting the Report and Recommendation to the U.S. Marshal for service on the Defendants. The Clerk should also be directed to send to Plaintiff USM-285 forms for each of the Defendants against whom a claim is proceeding.
3. Plaintiff should be given 21 days within which to furnish to the U.S. Marshal the required USM-285 forms with relevant information as to each defendant on each form at 400 S. Virginia Street, 2nd floor, Reno, Nevada 89501. Within 20 days after receiving from the U.S. Marshal a copy of the USM-285 forms showing whether service has been accomplished, if any of the defendants were not served, and if Plaintiff wants service to be attempted again, he must file a motion with the court providing a

more detailed name and/or address for service, or indicating that some other method of service should be attempted.

4. Plaintiff should be reminded that under Federal Rule of Civil Procedure 4(m), service must be completed within 90 days of the date of this any order adopting this Report and Recommendation. If Plaintiff requires additional time to meet any of the deadlines set by the court, he must file a motion for extension of time under Local Rule 1A 6-1 before the expiration of the deadline, and the motion must be supported by a showing of good cause. A motion filed after a deadline set by the court or applicable rules will be denied absent a showing of excusable neglect.

Dated: August 28, 2026

Craig S. Denney
United States Magistrate Judge